first matter is Porter v. City of Philadelphia. May I please the court? Craig Gottlieb representing the appellant City of Philadelphia. I'd like to reserve three minutes for rebuttal. Could you pull the microphone a little bit closer? Sign that says microphone is not adjustable. Don't pay attention to the sign. Maybe raise your voice a little. I'll speak louder. If time permits, your honors, I'd like to make three points today. There are three independent and alternative reasons that the court should reverse and enter judgment for this city. Reason number one, plaintiff failed to establish a First Amendment violation. Reason number two, plaintiff failed to establish that any city policy caused him any harm. And reason number three, plaintiff's claim is barred by Heck v. Humphrey. We start with the First Amendment issue. I'd like to begin. Can we agree on the nature of the forum? Maybe we can start there. Perfect. So the forum is a non-public forum. And the question that the court asked last week was whether the district court applied the correct standard. The district court did not apply the correct standard. The correct standard is whether the city's restriction is reasonable in light of the purpose of the forum and whether it's viewpoint neutral. But there's testimony here that, and we haven't discussed the case much ourselves, but since we're speaking only for myself and haven't been more involved with the sheriff's trial process in the city of Philadelphia than I could remember many years ago. I don't have any problem with the proposition that the city can cut off all comments at a sheriff's trial. And if you want to argue it's quasi-judicial, which I think you have, I don't have any problem with that. But the testimony here was to the contrary. They didn't cut off all comments. Hsu's testimony, it seemed to me, was accepted by the jury, and his testimony was that they allowed some comments and some comments they didn't. That's okay as long as the distinction is not viewpoint-centered. It does seem to me the record here supports a finding that the distinction in terms of what speech was allowed was viewpoint determinative. I would disagree, Your Honor, on a couple levels. I think just starting with the basic level, there's no evidence whatsoever linking the testimony that you're referring to to the city itself. But who was Hsu? He was an agent of the city, wasn't he? He was an agent of the city, but he was not a policymaker for the city. He was not a policymaker for the city. In fact, on page... Okay, well, that goes to the Menard claim. Does that help you in your First Amendment claim? The First Amendment claim is the Menard claim. The verdict was against the city. Okay. Well, except your first point is there's no First Amendment violation. So that's just... and obviously would have to be vis-a-vis the policy. But your first point is it's a nonpublic forum, and all you need is viewpoint neutrality and reasonableness, correct? That's correct. Could you address what you believe is necessary for viewpoint neutrality? The district court said they were picking on him, basically, and he was singled out. Is that the test for viewpoint neutrality? Give us the case law that says what viewpoint neutrality is. Your Honor, that's not viewpoint neutrality. That's not a viewpoint. What is it? What is viewpoint neutrality? Viewpoint neutrality would be one couldn't allow a speaker that says that, for example, is pro-Biden and not allow a pro-Sanders. So it's more an opinion or ideology aspect rather than singling out someone because he's perhaps a frequent flyer or created a disturbance. Correct. And, Your Honor, my view is that what the record suggests, what the record requires, is that he was singled out because he was speaking. That's the nature of the singling out. Well, he was also singled out because he had... I mean, the sheriff's office was waiting for this guy. He'd been a pain, hadn't he? He'd gone and he'd wanted to make this known, and he'd gone to court and he'd let the sheriff's office know he wasn't happy. I mean, wasn't that pretty much it? He let the sheriff's office know that he wanted to speak. And what he wanted to say. Well, perhaps, but what he wanted to say doesn't matter. Well, it does if he was cut off from speaking because of what he was going to say, as opposed to the fact of the speech itself. In the Shue's testimony, we try to get as much money for the property as possible. And then he also said, now, announcements like this, not announcements, announcements like this, I believe, could cause someone, a third party, to say, I'm not going to get involved in this. And they went on to say people sometimes did make an announcement, and that would be if, for example, say that morning someone got a bankruptcy. And then it can tend to have a chilling effect. And I think this came out a couple of times where he said it can tend to have a chilling effect on a third party's desire to bid on the property. It seems to me that's the concern. That's what concerned Judge Belson, that this person here was cut off because what he had to say was going to have a chilling effect on the sale of the property. Not because he was speaking at a place where they did not allow any comment. So, Your Honor, I don't think ultimately the record read as a whole supports that. And if you look at I think you were reading from around 500 of the record as that testimony goes on. That's correct. Five hundred. That's the beginning of his testimony that I read from. And then the next 15 or so pages. Right. And what what what Mr. Chu ultimately says is he's asked, do you allow speech? And he's saying we don't allow any speech. He doesn't. He's very clear that that the speech they don't allow any speech except. And I just want to be clear about this. The one speech that we do agree is allowed is speech that says I have an order from a court or a bankruptcy petition. Those are the exceptions. That's what he relied upon in terms of title. And he needed something official. He said he wasn't going to just take Porter's statement that he had some interest in the property. He wanted something official. He said a deed or a court order, a bankruptcy petition, something of that sort. But he very specifically said that it seems to me the jury's verdict confirms the fact that they did not allow announcements. And he said that could show the sale. That's his term. That could show the sale. So go ahead. Even if that is the case, is that is that run afoul of viewpoint neutrality? It doesn't, Your Honor. Thank you. Let's take the worst case scenario. And I think there's there's a step in between two, which, again, that's just to Mr. Chu's testimony. None of that links to the Monell claim. There's no city policy that Mr. Chu was testifying to. That's point number one. Point number two, let's say the worst case scenario. Let's say this is a city policy. Let's say the state policy says we're going to exclude value damaging speech. And we're going to allow value, I guess, enhancing speech. I suppose that's the opposite. I don't think the testimony says that. But let's say let's say that's what the testimony says. And let's say that's a city policy in this forum. That's not a viewpoint. That is a reasonable distinction for the city to make in this viewpoint in this forum. The purpose of it again, I lost it. I say what you just heard. Sure. The purpose of the forum is to promote sales. This is a sheriff sale forum. And get the most money and get the most money for the benefit of the person being foreclosed. So the bank doesn't take it back, et cetera, et cetera. Correct. So in that sort of forum, it is eminently reasonable to follow this value chilling. But isn't this isn't the fact that the subject property is being sold subject to a declaratory judgment action? Isn't that a relevant fact that a buyer would want? I mean, if you if you hid that fact from a buyer in a private transaction, it would be fraud. Right. I'm not sure if it would be fraud, but I but I do accept that it's relevant. So why can't why can't a seller say, hey, he's not saying, look, the pain's bad. The neighborhood's bad. I haven't done the carpets in 20 years. You don't want this. It's not worth. He's just saying, look, there's a declaratory judgment action. You should know that. Because this is this is this is a forum for sales. There are hundreds of people at the sales. There are hundreds of sales taking place. If every person did that, the sales would not occur. That's point number one, your honor. Point number two is, is there were many alternative. There were many adequate opportunities to make that point before the sale. It's not like this is the only chance in the world. I don't think that would matter anyway. But Mr. Porter had many opportunities to to ultimately what he was trying to do was protect his wife's interest. He had many opportunities to protect his wife's interest. He pursued those opportunities. He lost those opportunities. But as I understand it, the bank's lawyer was supposed to come and make that announcement. If that had happened, would the bank's lawyer have been allowed to make the announcement? I don't think so, your honor. I think that that that the point is that the note, the no comments, no comments are allowed. But there's a factual issue there. We've got a jury for it. You're saying no comments are allowed as though that's a non-contested or stipulated fact. And that that seems to me is a dispute. It's whether or not all comments are barred. Well, I think that's that's what we are debating. But but I would in response to Judge Porter's question, I'm saying that that the hypothetical is as to whether the bank's comments would be allowed. I don't believe they would be allowed either. And just one, I'd like to read one sentence from the plaintiff's brief, your honor. Plaintiff's brief has this sentence. Let us know where you are. Page 24 of plaintiff's brief says the undisputed evidence was that the city had a policy of prohibiting people from speaking at sheriff's sales. That's plaintiff's brief. The district court similarly found as the court. This is on page 23 of the opinion, not not of the joint appendix, but of the opinion itself. As the court mentioned repeatedly, the uncontroverted evidence was clear that the sheriff's department had a policy of forbidding announcements at sales. That's that's very strong language from the district court. So it's I mean, so plaintiff refers to it as undisputed evidence. The district court calls it uncontroverted evidence. We certainly agree with this point as well. And this goes back to what I was saying, your honor. There's no linkage between even if you accept Mr. Chu's testimony. There's no linkage between Mr. Chu's testimony and the city. Point number one. Point number two, that's not a viewpoint anyway. It is. It is a reasonable. This is a reasonable content based distinction to make in a forum where you're trying to promote sales. Even if the policy. Well, the policy is not written. Right. Correct. It's a practice. It's not written. Right. Correct. OK. If the policy is, however, it's formulated, is viewpoint neutral. It can still be applied in a viewpoint discriminatory fashion. Right. If they were if they said, my motivation is to stop that guy because I don't like the looks of him. I don't like I know he's going to say something I don't like. It can be applied in a discriminant viewpoint, discriminatory manner. It could be your honor. You're right. But then that that would be a claim against the individuals. And they brought claims against the individuals and they lost the claims against the individuals. You can't have it. I mean, to have an applied claim against the policymaker, you have to show that the policymaker acquiesced in or embraced that viewpoint discrimination. There's no proof of that. So just to point out again, they did have a First Amendment claim against Mr. Chu. That claim failed ultimately. And against Mr. Stewart, that claim failed. I'm out of time, but may I make one point about that? Let me answer this. I'm trying to find phase 23 of the opinion in the timestamp or whatever it is that the court trial was put on. It's obliterating, at least on my PDF copy, the page numbers on the appendix. What is the appendix, the J.A. number? I believe it's I think they're up plus ten. So I want to say thirty three. Thirty three. OK, great. Thanks. Ma'am, briefly on that for your rebuttal, you said that if he doesn't rebuttal, he can't counter it. Could we let him speak now? Because then he can counter it. Go ahead. Just thank you on the point about damage. We think that the plaintiff can't establish a First Amendment claim. But even even if the city's policy violates the First Amendment, plaintiff has to show that that violation causes damage. There was a link, an affirmative link between the violation and his seven hundred and fifty thousand dollars worth of damage. But the problem is and he has to show that that was a reasonably foreseeable consequence of the policy. But your honor, there is simply no way that that a policymaker could foresee that could reasonably foresee that a no comment policy would lead to the violence that ensued here. There are there are too many superseding and intervening steps. And in fact, plaintiff's own closing argument said that said that that what it was. This is page nine or one of the joint appendix. It was completely out of their conduct. That was that was plaintiff's view. Plaintiff's brother described it as weird. A couple of the witnesses described it as never saw before or out of character. So what happened on the sheriff's sale on January 4th was, according to plaintiff, out of character, weird and never seen before. So how could a policymaker foresee that the policy of no comment would lead to violence? Most likely what would happen is if there's a policy, you'd ask you'd ask an individual to stop talking and the individual at some point would listen. But but there's simply no reasonably foreseeable consequence that the violence that ensued would happen based upon the city's policy. So this is an entirely independent basis for reversing and reversing and entering judgment for the city. And plus, we also have our heck argument, which is in our briefs. Thank you. Good morning, Your Honors. May it please the court. I represent the appellee, James Porter, who's here with me today. I'm going to jump right to the issue that this court seems to be most concerned about, which is the issue of forum analysis. And I would submit to the court that while maybe there is some room for clarification in that particular area, this is not the case in which to clarify it. Because there are two things that are consistent across the board, no matter what form you're in. And that is a restriction has to be viewpoint neutral and it has to be reasonable. And based on the evidence here and the cases that this court asked us to review, this policy failed both tests miserably. How was this speech suppressed merely because the public officials opposed the speaker's view, i.e. viewpoint? What was the viewpoint? It was very speaker had that that they were trying to suppress. It was very well known in the sheriff's department that there was controversy swirling around this property and that Mr. Porter's viewpoint was his family had an interest in this multimillion dollar building that was going up for sale. They knew that was his viewpoint. And Chu testified that based on that no known viewpoint, he assumed that Porter might try to stop the sale. But aren't you equating viewpoint with anything somebody wants to say? I thought viewpoint neutrality had to do with opinion or ideology or someone's view on an issue. It does. And what was his view on an issue? His view was that the there was he had an interest in the property and that if somebody was going to buy it, they were going to take it potentially subject to his interest. That was his viewpoint. That's that's a statement of fact. I mean, if he was going to say the sheriff's department, you know, thwarts everyone's ability to speak at a I'm against the sheriff's department. They're doing this all wrong, et cetera, et cetera. But he wanted to make a statement of fact, didn't he? Well, what he wanted to say that, you know, there's a mortgage here. How is that a viewpoint? What he wanted to say is very different from what Chu thought he was going to say. And Chu testified first. Well, that's where I'm getting to. Chu testified that he stopped him because he thought he was going to try to stop the sale based on his viewpoint. So, well, what then that's a valid I mean, presumably the sheriff's sale would have would be reasonable to say you're not allowed to say stuff that's going to going to stop the sale. But that's not a viewpoint. Well, I agree. That's not a viewpoint. And that was. And if you look at the curb, it's case, which seems to be the most on point case out there. There was what they called a clear constitutional right to object to the sale. But that aside, that's not what he was doing. And choose to knew that it was Mr. Porter's viewpoint. And it is a viewpoint because it wasn't established yet. It was his viewpoint that they had an interest in the property. So she was making assumptions based on what he knew was Porter's viewpoint. And that's the reason he was stopped. The testimony I'm having problem equating. I mean, when you say viewpoint, the way the Supreme Court has identified it is opinion or ideology. For instance, a held belief, if you will. And I just I guess I still having problems figuring out how this is a viewpoint. Maybe if you touch it and whether in terms of whether or not the statement was in favor of the sale as opposed to opposing the sale to get at the viewpoint. Well, two thought after the fact that that his statement might show the sale, which doesn't even make sense, because if Porter did have an interest in the property, he would want it to sell for as much money as possible. So here we have somebody speaks out of the sheriff's cell. The buyers are there like I'm not getting in the middle of this. You have ever been in a bankruptcy lawyer and you know, they're buying a lawsuit. They're buying a problem. People are going to say, you know, I'm steering clear to this. I'll go to the next one on my list. Well, the testimony was unanimous at trial that some people were allowed to speak and some people weren't. It depended on what they wanted to say. But nobody ever. Well, nobody ever was. Some people were asked to sit down, but nobody was ever violently attacked before they even got the first words out of their mouth. They've been because they sat down as soon as they were asked to sit down. No. The testimony was some people made their announcements. They were asked to sit down. That's a matter of degree, whether they were violently attacked or not. Well, the evidence has to be taken in favor of all fair and reasonable inferences in favor of Mr. Porter and Mr. Porter's testimony, along with a number of other witnesses, including city witnesses, is that he was violently attacked before he even had the chance to speak. So it was an extreme reaction that had never happened before. That in itself suggests that there's something more going on than just trying, you know, trying not to chill the sale. What do we do with the statement of the district court's opinion? And I had highlighted where I read it and then promptly forgot what the court said. As the court mentioned repeatedly, it's the same thing that Mr. Gottlieb referred to. The uncontroverted evidence was clear that the service department had a policy of forbidding announcements at sale. That's a good point. And I want to go there. The policy that they said was that there was no comment policy. The testimony established that wasn't entirely true. And the court is saying is uncontroverted evidence. That's because they all admitted there's a policy. There is a policy. The problem is how it's enforced. And enforcement of this unwritten policy exists completely and solely in the subjective mind of Edward Chu. That's not what the court was saying there, though. It said it had a policy of forbidding announcements at sale. That was the policy. But it's not written. So we can't objectively analyze whether it was reasonable or not, which is the second reason we never did the forum analysis. It was not only not viewpoint neutral. It was not reasonable because enforcement of the policy existed entirely in the discretion of Edward Chu. That's different from whether or not the policy itself was reasonable. Getting into the enforcement and whether or not it's as applied to a client is different from just, number one, was there a policy? Was the policy reasonable in terms of the nature of the forum? In the Minnesota voters case, the court wrote that it is self-evident that an undefined prohibition carries with it the opportunity for abuse. Discretion must be guided by objective workable standards. More covert forms of discrimination may result when arbitrary discretion is vested in some government authority. That makes the policy unreasonable. And that's exactly what we had here. It was entirely up to Mr. Chu to decide if, how, and against whom he was going to enforce the policy. And he testified, it depends on what they want to say. I won't let them say anything that will chill the sale, which is, in other words, that's a content-based. I'm not saying that's the viewpoint. I'm just saying he would restrict some forum-relevant speech if it was pro-buyer, but he would allow forum-relevant speech if it was pro-seller. Right, but that's content-based. And there's a difference between content-based and viewpoint-based. In Rosenberg, the Supreme Court said that viewpoint-based restrictions are that which discriminate on the basis of a specific motivating ideology or the opinion or perspective of the speaker. And that is viewpoint-based as compared to content-based, which is permissible. Isn't this content-based, what he was going to say, the content of it as compared to the viewpoint? A content-based restriction in a limited public forum, and this is a limited public forum, depends on the purpose of the forum. If there was a policy against letting somebody walk in and talk about the party they went to last night, that's a valid restriction, and it only needs to satisfy a reasonableness standard because it's against the purpose for which the forum was opened. Here, the restriction potentially is enforced against forum-relevant speech, so it has to satisfy a higher standard, which is a standard. But it's not viewpoint. Still, I'm having problems with viewpoint, but I don't want to argue. How should the city formulate its policy in a way that's reasonable and viewpoint-neutral but still allows the sales to go forward? So going back to what I said 10 minutes ago, I can understand the city's not wanting people to say, look, the elevators don't work well, the windows leak, it's a bad neighborhood, and all these subjective things. He just wanted to make a point about the cloud over the title. Where do they draw the line? Well, the first big step in that progression is to actually put the policy in writing instead of leaving it to the discretion of one city official to decide how to enforce it. That's the problem that we have here. What does that do to folks saying you're monocling? What does that do to your monocling? If the issue here is not, as you're arguing, and I know this is not the subject of your argument, you're kind of going with what we're taking here. If you're focusing on there being a policy without limits on the discretion of those persons enforcing the policy, but the policy itself is okay, assuming that it is, as taken with the district court's opinion, the policy becomes in the individual's application of that policy in a given situation, what happens to your Monell claim in that context? I think it supports the Monell claim because the city didn't bother to put its policy in writing and just vested enforcement of it. But for Monell, you don't have to have a written policy. It can be a customer practice. Right. The customer practice was a no-comment policy, but we'll let Mr. Chu decide how he enforces it or if he enforces it. That was the policy. Why isn't that an individual cause of action against Chu as opposed to a Monell claim against the city? Well, I think it's both. But I think the city's the one that gave him the discretion to do it. So that was part and parcel to the policy. That's the only way it could be enforced because it wasn't in writing. So there had to be somebody who enforced it, and the city let Mr. Chu make that decision when and if he was going to enforce it, which in itself makes the policy unreasonable. So are you saying there really is no policy? No, there is a policy. The policy is generally we have a no-comment policy. Unanimous testimony was we don't totally follow it because Mr. Chu gets to decide.  Well, I'm just confused as to how that undercuts your Monell claim. It says it's something against Chu, but it doesn't undercut. Your Monell claim needs to be that there is a policy. By virtue of the fact that you're saying the city lets someone else go rogue with it, maybe that undercuts the fact that there is a policy that's enforced and in play. I don't know. Well, the policy, I mean, it was undisputed, as we said in our brief, that there was a policy. And Sheriff Dealey testified to that, and she was the policymaker. And the testimony was, here's the policy. Mr. Chu enforces it. So given that the city trusted Mr. Chu as its agent to enforce this no-comment policy, that's the policy of the city that Mr. Chu gets to enforce it. So it was the city's policy. The policy was not reasonable. And in this case, it was not viewpoint neutral. So when we're talking about forum analysis, while I would love to get into that discussion, I don't have time. But we don't get that far in this case because it doesn't matter what forum you're in. You can't be viewpoint discriminatory and you can't be unreasonable. And this policy was both. And the third reason we don't get to forum. Why was it unreasonable? Why is it reasonably related to the purpose of the forum? Because under Minnesota voters, any policy where the enforcement is entrusted to the discretion of one person is on its face an unreasonable policy. Here it was unreasonable as applied as well. But we don't even have to go to that step because under Minnesota voters, just the fact that Chu was the one who got to decide made the policy unreasonable. The third reason I don't think we get to forum analysis is because here there was no objection. All of the parties agreed that it was a limited public forum. And all of the parties agreed to the standard and the jury instruction, which Judge Baleson took verbatim from the Galena case. So the city was promoting the limited public forum. The city promoted the standard that was applied. Nobody objected to it. So even if that was somehow error, and I don't think it was, it's both waived and it was actually invited because nobody disputed it. So that's the third reason I don't think we get to analysis, to forum analysis in this case. Well, if we find that the standard that the district court used following Galena was wrong, then even if the parties and the judge all agreed on the standard, I mean, it could still be wrong, right? Well, but Judge Baleson was bound by Galena. That was binding Third Circuit precedent. He had to follow it. I think it was proper. And I think I'd love to get in discussion of the Kramer case, because I think the Kramer case is the one that helps reconcile what appears to be discrepancies in the cases. But under Kramer, just very briefly, the library there was a limited public forum with a set of rules. But the standard that the court applied in reviewing the rules depended on what the rule was. So if the rule was consistent with the purpose for which the library was open, such as prohibiting disruptive conduct, then it applied a reasonableness standard, just like in a non-public forum. But if the rule was the one based on personal hygiene, the court said that potentially you're going to end up ejecting somebody who's actually engaging in legitimate First Amendment activity that serves the purpose of the forum. So we have to subject that rule to a higher standard of scrutiny as if it were a designated or traditional forum. So in a limited public forum, and I think this is where some of the confusion appears, it's not the nature of the forum that you're looking at so much as the nature of the restriction. And here the nature of the restriction was to prohibit forum-relevant speech. So it has to be subject to a higher level of scrutiny than just reasonableness. Are you saying that because GALENA may have not been as clear as later cases, Minnesota voters and NAACP, which pretty clearly said non-public forum unless you've designated it as a place for speech and reasonable and viewpoint neutral, are you saying that because GALENA was the case law at the time that we can't say that it was wrong? No, but I'm saying it's not wrong. It's not wrong based on Cramer. Well, that was a different situation. I mean, that was a designation there for some speech. Here we have a situation where it really is a non-public forum. It's not a place for speech. Well, it can't be judged on that standard, though, because the restriction is implemented in such a way that it is potentially contrary to the purpose of the forum, such as in this case the announcement Mr. Porter wanted to make was directly relevant to the forum, but they restricted it. So it has to be subject to a higher level of scrutiny under Cramer. And I will say this. What testimony is there that says the policy was that there was a place for some speech? That that was the policy? I don't think I said that. But, I mean, there was testimony that people did stand up and make announcements. There was testimony. They were pulled aside. Sometimes they were asked to sit down. The testimony was they made their announcement, they were asked to sit down. Or pulled aside. But there was no testimony that people actually did address the crowd without any ramification, was there? Well, I think there was. I mean, if you look at all the city employees who testified, they all basically kind of said, yes, sometimes people do. Sometimes it happens. In fact, even Daryl Stewart, who happened to be in charge of the sale at the time, said it happens. Yes, people make announcements. I mean, it seems very, you know, the no comment policy didn't really seem to be truly a no comment policy in the way that Edward II was given discretion to enforce it. I have one more question. Go ahead. I'm interested in your assertion a minute ago that GALENA is good law. Not just that it's still binding, but that it makes sense. It's an accurate statement of First Amendment jurisprudence in the first place. Because GALENA says a content-based restriction is fine if it's reasonable. And it's reasonable if it's content neutral. I don't the whole GALENA seems to me to be internally inconsistent. And I don't know why. I'm curious to know why you think it makes sense. Well, in GALENA, the restriction was potentially contrary to the purpose of the forum. He was at a city council meeting and he wanted to speak to a subject relevant to city council meetings. He was doing it at the wrong time. So the restriction was potentially contrary to the purpose of the forum. So the court applied a higher standard test, which I think is appropriate, especially if you read the Kramer case. So while I think the language has been less than clear in some of these cases, as recently as 2015 in the Sons of Confederate Veterans case, the United States Supreme Court was still recognizing four, not three. I mean, they call it three because one's a subset. But non-public forum is very, very differently defined than limited, which is different from designated, which is different from traditional. They all have different definitions. So we're talking about four, even though one might be a subset of the other. So cases have been less than clear. GALENA might not have been entirely clear, but I think it applied the right standard because the restriction that it was addressing was one that ran contrary to the purpose of the forum. So when you say the sheriff's sale was a limited public forum, what you mean by that is that it's not non-public and it's not designated, but it's something in between. Absolutely. Because there are four, not three categories. Yes. And the definitions are very clear. If you pull them out of all the cases and set them side by side, they are different. They are not the same. And I will say in the NAACP case, in a footnote, cites to a footnote in Galena that suggests that the U.S. Supreme Court is now using non-public and limited interchangeably, and it cites to the Christian Legal Society. I don't think that's what CLS case did. In fact, you won't find the word non-public in the CLS case anywhere. What the CLS case did was apply the reasonableness standard because the restriction in that case did not run contrary to the forum. Go ahead. So while the language could be clearer, I don't think the Supreme Court has ever said that those two things are the same or used them interchangeably, and as of 2015, it was still defining four separate categories. But didn't it in Minnesota voters set forth the three forum, the three types, the traditional public forum, the designated public forum, and the non-public forum? I think that Minnesota, as with some of the other cases, I think they define it kind of based on what the restriction is. To me, where the limited public forum falls on the spectrum depends not on the forum as much as on the restriction. So some of the cases apply one standard, and some of the cases apply the other standard, and they don't clearly explain why they're doing it. Although it does define a non-public forum in a way that seems to fit here, and that is a space that is not by tradition or designation a forum for public communication and says the government has much more flexibility to craft rules limiting speech. Wouldn't this fall in a non-public forum? No. I would suggest that that definition excludes this from being a non-public forum because it was open to the public. Open to the public, but isn't a sheriff's sale by tradition or designation a forum, not a forum for public communication? It's a forum for sheriff's sales, much like a court is a forum for judicial proceedings. It was a forum that was designated as a public forum, that was not a traditional public forum with a limited purpose. But it's designated as a place for public communication, you're saying? Yes. Well, how so? When you say designated, you're using designated in terms of designated for public use. The cases talk about designated in terms of being designated for an exchange of ideas or designated for communication. I think that's where the confusion is popping in. Well, and the designated forum is not traditional, obviously, but the government opens the doors and says come one, come all. Come in and speak. Right. And that's what this was, you're saying? No. In a limited public forum, not traditional, but the government opens its doors and says come in and talk about this particular subject. Or just come in and don't talk. Or that. But based on the purpose of the forum, the limited purpose of the forum, any restriction that potentially runs counter to that purpose has to satisfy a higher standard. What communication did they say come in and speak in the sheriff's sale context? What was the limited speech? Well, they didn't say because it's up to Chu to decide. I mean, both of the foreclosure attorneys and the foreclosure judge all believed that this was a relevant, important announcement and assumed that there wouldn't be any problem making it. They all expected this announcement to be made. But Edward Chu was the one who got to decide, and he's the one that shot it down. Yet the jury found it in his favor. Well, the jury found against him on, I believe it was retaliation, if I remember correctly. The jury did find it against him. That's not part of the case here. But the judge instructed the jury that there was a constitutional violation here. Well, I would submit that the judge instructed the jury because the evidence was undisputed both that the policy was unreasonable and that it was not viewpoint. Well, I'm not saying why the judge did it, but the judge instructed the jury that this prevention of his speaking, this prohibition, violated his constitutional rights. The judge instructed the jury that if they believed Porter's testimony, there was a violation. Right. I wanted to just touch briefly on how a – Let's focus on that, and we may be out of time on it. But to some extent, that charge does seem problematic because Porter's testimony could not include within it all the kind of nuances and subtleties that we're trying to make sense out of here in terms of what is the nature of the forum. Porter's testimony couldn't talk about whether or not – what the custom was because I don't think the record would reflect that he'd been in enough sheriff's jails to be able to talk about a custom. So how would his testimony, if accepted, be sufficient to direct a verdict? Because he had – If you talk about his sale, this is one day. Right. What happened on that day? But the purpose of the sale was the buying and selling of property, and his announcement was directly related to that purpose, and he was immediately silenced and wasn't allowed to say anything. And, again, if you look at the Kurbitz case, which I think is the best case, we have the Western District of Michigan, affirmed in the Sixth Circuit, concluded that he clearly had a First Amendment right to show up at a sheriff's sale and object to a sale because it was forum-relevant speech. This was certainly forum-relevant speech, and he wasn't even objecting to the sale. He was just trying to convey information. But we're struggling with these issues, and the judge made a conclusion, a legal conclusion that there was necessarily a violation of constitutional rights. Isn't this the kind of case where these issues – was it viewpoint-neutral? Was it reasonably related? Was there – you know, what's the nature of the policy? These types of things are typically jury issues as compared to Judge Baleson saying, I'm instructing you. This was a violation of constitutional rights if you believe Porter's testimony. Wasn't that error on part of the district court? I don't think it was. I don't think it was because given the evidence, and much of which was undisputed, and given the fact that I believe the stricter scrutiny standard applied, the city presented no evidence whatsoever that its no-comment policy was narrowly tailored. It never mentioned it. Narrowly tailored isn't – doesn't – oh, you're still under a different forum than I am. I'm still thinking non-public forum. Okay, go ahead. And also the city presented no evidence that there was any alternative forms of communication, let alone ample alternatives. And the evidence established that there was no alternative because he had one opportunity to let potential buyers know that there was this federal declaratory judgment action pending. This was the only opportunity he had. So you're saying it's not just a matter of reasonableness and viewpoint neutrality. You believe it's a higher standard requiring narrow tailoring and alternative means of communication. Yes. Absolutely. Thank you. Thank you. Mr. Gottlieb. Thank you, Your Honors. Just to – although we do think that the judge clearly directed a verdict. Just to be clear, we're not merely asking for a new trial, but we think that judgment should be entered for us on the First Amendment issues because as a matter of law, the plaintiff failed to meet the requirements of the First Amendment. And on that point, just briefly on the standard, we did argue below that the proper standard was the non-public forum. We submitted a brief to the district court where we specifically argued that here, the sheriff's sale as a court proceeding falls into the third category as a non-public forum. So we certainly made that argument. And ultimately, I think it pretty clearly is a non-public forum in the sense of the least restrictive of the types of forums because this is very – it's ultimately akin to a court proceeding. There can't be – You mean the most restrictive. You said the least restrictive in terms of the speech allowance. The most flexible in terms of what the government can do. Correct. Correct. Flexible for the government. The government can restrict speech the most. And even Galena is a slightly different case in that Galena did open a forum in the middle of the city council proceedings for speech. There was a speech forum within the city council proceedings there. So that – Galena was properly decided in terms of its result. But even this case is – should give broader rights to the government because there was nothing open to the public here. Well, that's the policy. But couldn't a jury find, after hearing all the testimony that has applied, the government sometimes did allow people to speak? Perhaps individuals did, yes. Not the city, but perhaps individuals did. And on that point, Ron, I didn't hear anything that dislodged our argument there. And this is also pointing to the district court's opinion. On page JA18, the district court is just reviewing the testimony. And this is a small point, but he's reviewing Sheriff Dilley's testimony. And Sheriff Dilley testified that the city had a policy of prohibiting announcements at sheriff sales. She was the policymaker, not Mr. Chu. So no matter what Mr. Chu said about what he did, he doesn't speak for the city's policies. And regardless, we do not believe that – even accepting Mr. Chu's testimony, we don't believe that he drew a distinction between one viewpoint and another viewpoint. And as Judge Rendell mentioned, there's the Rosenberger case, and Rosenberger cites the Perry case, all these cases talking about how there has to be a discrimination as to ideas or ideologies and not simply a fact. So for these reasons, the court should reverse and enter judgment on the First Amendment claim. I just want to emphasize one other point, Your Honor. We didn't really have much time to talk about causation or heck, but we do think that our arguments on causation and heck are also very persuasive, and I wanted to reemphasize those as well. Okay, well, in the brief, Your Honor, for myself, it seems to me your best arguments are the ones that we've covered here in some detail, the heck argument. I understand what you're saying, but I'm not sure it's nearly as formidable as your other arguments are. The sheriff that you just mentioned, was she the policymaker at the time? I thought she came later. She came a couple of days earlier. She was sheriff as of January 1st. The sale was January 4th. Thank you, Your Honor. Thank you, Counselor. Thank you, Madam Underadviser. Would I get a transcript? If you can see Ms. Motto, and you can split the cost of that on the transcript.